UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTHONY TODD                                    CIVIL ACTION

VERSUS                                          No. 08-1195

STEAMSHIP MUTUAL                                SECTION "C" (3)
UNDERWRITING ASSOCIATION, LTD.

ORDER AND REASONS

Before the Court is Defendant, Steamship Mutual Underwriting Association Limited's ("Steamship"), Motion to Compel Arbitration and Motion to Stay. (Rec. Doc. 55). After reviewing the record, memoranda of counsel, and the applicable law, Defendant's Motion to Compel Arbitration and Stay is GRANTED for the following reasons.

I. BACKGROUND

Anthony Todd was injured in 2000 while serving as a seaman aboard the M/V AMERICAN QUEEN, which was owned by Delta Queen Steamboat Company ("Delta Queen"). (Rec. Doc. 25 at 2). In 2002 Todd sued Delta Queen in Louisiana state court, eventually winning a final judgment, which Delta Queen has not satisfied. *Id.* Todd subsequently filed suit against Delta Queen's liability insurer, Steamship, as authorized by Louisiana's Direct Action Statute, La. Rev. Stat. Ann. §§ 22:1269 & 655 (2009). (Rec. Doc. 1-1).

Because Steamship's policy with Delta Queen included an arbitration provision, Steamship removed Todd's suit to this Court and sought to stay the proceedings and have arbitration

1

compelled, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* (Rec. Doc. 17). This Court denied Steamship's motion to compel, following *Zimmerman v. International Companies & Consulting Inc.*, 107 F.3d 344 (5th Cir. 1997), which held that the FAA did not require Direct Action plaintiffs, such as Todd, to arbitrate their claims. 107 F.3d at 346. Steamship filed an appeal with the Fifth Circuit, which reversed this Court's decision because it found that *Zimmerman* and an earlier decision, *In re Talbott Big Foot, Inc.*, 887 F.2d 611 (5th Cir. 1989), were overruled by the Supreme Court's decision in *Arthur Anderson LLP v. Carlisle*, 556 U.S. ___, 129 S.Ct. 1896 (2009). *Todd v. Steamship Mutual Underwriting Assoc. (Bermuda) Ltd.,* 601 F.3d 329, 336 (5th Cir. 2010).

In *Carlisle*, the Supreme Court found that non-signatories to arbitration agreements can sometimes compel parties to arbitrate under the Federal Arbitration Act ("FAA"), "if the relevant state contract law allows him to enforce the agreement." 129 S. Ct. at 1903. The Supreme Court explained that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Id.* at 1902 (quoting 21 R. Lord, *Williston on Contracts* § 57:19, p. 183 (4th ed. 2001)).

The Fifth Circuit subsequently remanded Todd's case back to this Court, for further proceedings to determine whether or not Todd may be compelled to arbitrate. *Todd*, 601 F.3d at 330. On remand, the Fifth Circuit pointed to three significant matters it wanted addressed. First, the Fifth Circuit directed the Court to look at a complete copy of Steamship's 1999/2000 Rules to determine if the agreement clearly addresses whether a non-signatory may be bound to arbitrate. *Id.* at 336. Next, the Fifth Circuit directed the Court to determine what law should apply to establish whether Todd must arbitrate, focusing in particular on the effect of a choice-of-law clause in Delta

2

Queen's policy selecting English law to govern the contract. *Id.* Third, if Todd may be bound to arbitrate, the Fifth Circuit directed the Court to determine if all of his causes of action are captured by the arbitration agreement and the Court must also consider what effect Todd's judgment against Delta Queen has on the question of whether he must arbitrate with Steamship. *Id.* In addition to these three matters, the Fifth Circuit also requested the Court to determine whether Louisiana's Direct Action Statute runs afoul of the New York Convention. *Id.*

## II.  LAW AND ANALYSIS

### A.  The New York Convention

The United States is a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").  Convention on the Recognition and Enforcement of Foreign Arbitral Awards,  June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (1970).  Article II of the Convention states:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration any or all differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
>
> 3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

*Id.* Congress also passed legislation implementing the Convention ("the Convention Act").  9 U.S.C. § 201 *et seq.*  The Convention Act provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein

provided for, whether that place is within or without the United States." 9 U.S.C. § 206. The

Convention Act incorporates the Federal Arbitration Act ("FAA") to the extent that the two do not

conflict. 9 U.S.C. § 208. Because the incorporated FAA provides for a mandatory stay, "parties

whose agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. §

3, a provision of the domestic FAA." 601 F.3d at 332.

Under the Convention and the Convention Act, courts must compel arbitration if there is a)

an agreement in writing to arbitrate the dispute; b) the agreement provides for arbitration in the

territory of a Convention signatory; c) the agreement arises out of a commercial legal relationship;

and d) a party to the agreement is not an American citizen. *Francisco v. Stolt Achievement MT*, 293

F.3d 270, 273 (5th Cir. 2002).

If this case only involved a dispute between Delta Queen and Steamship about the insurance

policy between them, then the Convention would clearly require this Court to compel arbitration.

Neither party disputes the fact that Delta Queen and Steamship entered into a written agreement to

arbitrate any disputes arising from the insurance policy between them. Furthermore it is not

disputed that the arbitration agreement arose out of a commercial legal relationship between Delta

Queen and Steamship. Finally, there is no dispute that Steamship is a Bermudian company and the

agreement provides for arbitration in the United Kingdom, a Convention signatory.

However, in this case Steamship is seeking to bind Todd to the arbitration agreement

between Steamship and Delta Queen. This Court denied Steamship's initial request to compel

arbitration because it felt bound by *Zimmerman*, which had held that the FAA did not require Direct

Action plaintiffs, such as Todd, to arbitrate their claims. (Rec. Doc. 39 at 2) (quoting *Zimmerman,*

107 F.3d at 346). On appeal the Fifth Circuit found that *Zimmerman* had recently been effectively

overturned by the Supreme Court and remanded the case for proceedings consistent with its opinion.

4

*Todd,* 601 F.3d at 336.  Specifically, the Fifth Circuit instructed this Court to determine if the terms of the agreement between Steamship and Delta Queen address whether a non-signatory can be bound to arbitrate.  *Id.* at 336.  In the event that the agreement is silent on this question, the Fifth Circuit instructed this Court to determine what law should apply to determine whether Todd must arbitrate as a non-signatory.  *Id.*

### B.  Steamship's 1999/2000 Rules Do Not Clearly Address Whether a Non-signatory May Be Bound to Arbitrate.

Rule 36 of "The Steamship Mutual Rules and List of Correspondents, 1999/2000," provides a two-step resolution process for Members (insureds) and the Club:

> a. If any difference or dispute shall arise between a Member and the Club concerning the construction of these Rules or of the Rules applicable to any Class in the Club or of any Bye-Law passed thereunder, or the insurance afforded by the Club under these Rules, or any amount due from the Club to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Directors.

> b. If the member does not accept the decision of the Directors the difference or dispute shall be referred to the arbitration of two arbitrators, one to be appointed by each of the parties, in London, and the submission to arbitration and all the proceedings therein shall be subject to the provisions of the English Arbitration Act[.]

(Rec. Doc. 55-4 at 30).

Both parties agree that the Rules do not specifically refer to third parties, or assignment of claims, however the parties draw different conclusions from this silence.  Steamship concludes that because the Rules are silent on the issue, it must be determined by *lex fori*.  (Rec. Doc. 55-1 at 12).  Todd argues that the New York Suable Clause[1] establishes that a dispute between a third party

---

[1] The clause reads: "When used in this Clause, the word 'Member' shall include any mortgagee under a ship mortgage which applies to a vessel while it is entered in the Association pursuant to this certificate and any person succeeding to the right of any such mortgagee and also

5

whose action is based on the Member's liability is distinct from a dispute between the Club and the Member.  (Rec. Doc. 65 at 17).  As a result, Todd argues that the Rules do not provide a mechanism for a third party to invoke the arbitration procedure, since only "members" can do so.  *Id.*

Steamship argues that Todd's reliance on the New York Suable Clause is clearly mistaken, because the New York Suable Clause applies solely to proceedings filed in the United States District Court for the Southern District of New York.  (Rec. Doc. 55-1 at 21).  Furthermore, Steamship argues that in *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295 (2nd Cir. 1996), the Second Circuit rejected the argument that the New York Suable Clause superseded the compulsory arbitration clause in Rule 36.  *Id.* at 298.

The Court finds that Steamship's Rules do not clearly address whether a non-signatory may be bound to arbitrate under Rule 36 of those Rules.  The Rules only refer to the insurer (Club) and the insured (Member).  The only clause of the Rules that does mention third parties, the New York Suable Clause, does not apply to this case, because this clause only applies to cases brought in the Southern District of New York.  Moreover, since the New York Suable Clause explicitly uses a unique definition of "Member,"[2] that special definition of "Member" does not apply to Rule 36.

---

any other person or persons who, under the express terms of the insurance, may be legally entitled to maintain an action thereon in his own name and for his own account, but the word 'Member' shall not include any third party whose action is based upon a liability which is alleged to have been incurred by the 'Member' and is alleged to be insured against by the contract of insurance described in the Certificate to which this Clause is attached."  (Rec. Doc. 55-2 at 8).

[2]  The drafters of the New York Suable Clause wrote, "*When used in this Clause*, the word "Member"...shall not include any third party whose action is based upon a liability which is alleged to have been incurred by the 'Member' and is alleged to be insured against by the contract of insurance described in the Certificate to which this Clause is attached."  (Rec. Doc. 55-2 at 8) (emphasis added).

### C.  Louisiana State Law Applies to the Question of Whether Todd must Arbitrate.

When deciding whether to compel arbitration a court is faced with two separate questions. *See Carlisle*, 129 S.Ct. at 1901.  The first question is whether there is a valid agreement to arbitrate that binds the parties before the court.  *Id.* at 1902.  The second question is whether the agreement to arbitrate applies to the claims before the court and therefore can be enforced as to those claims. *Id.*  Before this Court can decide the substance of these distinct questions, it must decide what law applies to each question.

Steamship argues that federal case law, not state law, determines whether Todd is bound to arbitrate.  (Rec. Doc. 55-1 at 8).  Because this is a Convention case, Steamship argues that the "body of [the] federal substantive law of arbitrability" governs the issue of whether Todd is bound to arbitrate.  *Id*.  In further support of the position that Federal arbitration law rather than state arbitration law governs New York Convention cases, Steamship cites numerous Fifth Circuit cases that pre-date *Carlisle*.  (Rec. Docs. 55-1 at 22 & 74 at 6-11).  Finally, Steamship argues that *Carlisle* supports the conclusion that the FAA created substantive federal law regarding the enforceability of arbitration agreements.  (Rec. Doc. 74 at 7).

While it is true that in *Carlisle* the Supreme Court recognized that the FAA created substantive federal law regarding the enforceability of arbitration agreements, the scope of that federal substantive law is narrower than Steamship suggests.  The Supreme Court found that § 2 of the FAA created substantive federal law, which requires courts to place arbitration agreements on the same footing as other contracts.  129 S.Ct at 1901.  In other words, *Carlisle*  held that federal substantive law validates arbitration clauses that are enforceable under generally applicable state contract law.  Therefore, the substantive federal law of arbitrability requires the Court to apply state contract law, so long as it is generally applicable to all contracts.  *Id.* at 1902.  The Supreme Court

made this clear when it held that the FAA did not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* "State law therefore is applicable to determine which contracts are binding under § 2 [of the FAA] and enforceable under § 3 *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* (emphasis in original) (internal quotations omitted).

Nevertheless, Steamship suggests that *Carlisle* should not control the outcome of this case because that case arose under the FAA, while this case arises under the Convention and Convention Act. (Rec. Doc. 74 at 14). However, Steamship also acknowledges that the Fifth Circuit concluded that *Carlisle* does apply to Convention cases as well as FAA cases because under "both FAA and Convention cases, courts have largely relied on the same common law contract and agency principles to determine whether non-signatories must arbitrate, and *not* law derived from statute or treaty." 601 F.3d at 334.

As a result of the Fifth Circuit's specific instructions, this Court finds that Louisiana state law controls the questions of whether Todd, as a non-signatory, can be bound to the arbitration agreement between Delta Queen and Steamship, as well as whether Todd's claims fall within the scope of that arbitration agreement. Furthermore, as Steamship has invoked the diversity jurisdiction of this Court, Louisiana choice-of-law rules will determine what substantive body of law controls whether Todd can be bound to arbitrate and whether his claims fall within the scope of that arbitration agreement.[3] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 486 (1941)

_____

[3]This conclusion is would not by altered by application of federal admiralty law. A marine insurance policy is a maritime contract within federal admiralty jurisdiction. *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 428 n. 4 (5th Cir. 1980). However, the Supreme Court has clearly stated that unless it conflicts with federal maritime law, state law properly regulates marine insurance. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955). The Fifth Circuit has found, therefore, that "the interpretation of a contract of marine insurance is - in the absence of a specific and controlling federal rule - to be determined by

(holding that a federal court sitting in diversity must apply the choice-of-law rules of the forum state).

In Louisiana, choice-of-law clauses in contracts are given effect unless there is law or strong public policy justifying the refusal to enforce the contract as written. *Prescott v. Northlake Christian School*, 369 F.3d 491, 496 (5th Cir. 2004). Moreover, Louisiana courts have held that the validity of an arbitration agreement is determined by the law selected in the agreement itself. *Bolden v. FedEx Ground Package System, Inc.*, 2011 WL 543174 at *9 (La. App. 4 Cir. 2011) (remanding case for determination of the validity of an arbitration agreement under Pennsylvania law, which was the law selected in the contract). Because the policy between Steamship and Delta Queen specifically selected English law to control the interpretation of the policy,[4] English law will govern both whether Todd may be bound to the arbitration agreement between Steamship and Delta Queen as well as whether Todd's claims fall within the scope of that arbitration agreement.

As stated in the expert report submitted by Steamship, under English law the issue of whether a non-signatory can be bound to arbitrate is determined by the *lex fori*, or law of the forum, which in this case is Louisiana state law. (Rec. Doc. 55-5 at 4). Therefore this Court will follow English choice of law and apply Louisiana state law to the question of whether Todd may be bound to arbitrate as a non-signatory.[5]

---

reference to appropriate state law." *Ingersoll-Rand Financial Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985).

[4]Rule 36(d) reads as follows: "These Rules any Contract of Insurance between the Club and a Member shall be governed by and construed in accordance with English law." (Rec. Doc. 55-4 at 31).

[5]Under Louisiana law a court is free to apply the choice-of-law rules of another state provided that the Louisiana Civil Code does not explicitly mandate the application of a particular state's law. La. Civ. Code Ann. Art. 3517 (2009), Revision Comments-1991, note (d). Because the Louisiana Civil Code does not mandate the application of any particular state's laws to this case, then there is "no compelling reason" why English choice of law should not apply. *Id.*

The Court now turns to the issue of what law applies to determine whether Todd's claims *fall within* the scope of the arbitration provision between Steamship and Delta Queen.  Louisiana permits "depecage", or issue-by-issue choice-of-law analysis, and therefore this Court has to determine what law applies to this separate question.  La. Civ. Code Art. 3515 (2009), Revision Comment-1991, note (d).  In determining whether a particular dispute falls within the scope of an arbitration agreement Louisiana courts apply the contract law of the state that governs the agreement.  *Lafleur v. Law Offices of Anthony G. Buzbee, P.C.*, 960 So.2d 105, 111 (La. App 1 Cir. 2007).  As mentioned above, the Louisiana Civil Code and Louisiana courts generally allow parties the autonomy to chose the particular law that will govern their contracts.  La. Civ. Code Art. 3540.  Because Delta Queen and Steamship selected English law to govern their insurance policy, pursuant to Louisiana choice-of-law rules, this Court will apply English law to determine whether Todd's claims fall within the scope of the arbitration agreement between Delta Queen and Steamship.

Under English law an express choice-of-law clause only governs the substantive rights and obligations arising under the contract, not the procedural law relating to the contract, which is determined by the law of the forum.  (Rec. Doc. 55-5 at 5).  Unlike the question of whether Todd can be bound to arbitrate as a non-signatory, which is a procedural law question, the question of the scope of the arbitration clause in Delta Queen's policy is a question about the substantive rights created by that policy.  As a substantive question, this Court will apply English law to determine whether Todd's claims fall within the scope of the arbitration agreement between Delta Queen and Steamship - provided Todd can be bound to that agreement at all.

In summary, this Court finds that under *Carlisle* it is compelled to apply  generally applicable Louisiana contract law to determine whether Todd, as a non-signatory, can be bound to arbitrate his claims against Steamship.  Because Louisiana contract law also includes Louisiana

choice of law, this Court finds that English law, including English choice of law, will determine whether Todd is required to arbitrate his claims against Steamship.  Under English choice of law, this Court finds that Louisiana law will determine whether Todd can be bound to arbitrate as a non-signatory, while English law will determine whether Todd's claims fall within the scope of the arbitration agreement between Delta Queen and Steamship.

### D. Under Louisiana Law Todd May Be Compelled to Arbitrate as a Non-signatory.

Todd argues that he never agreed to arbitrate his dispute with Steamship and therefore cannot be bound to the arbitration agreement between Delta Queen and Steamship.  (Rec. Doc 65 at 5).  In response Steamship argues that Todd's claims all derive from the policy between Steamship and Delta Queen and he is therefore bound by all of the terms of that policy.  (Rec. Doc. 55-1 at 8).

While it is true that Todd is not a party to the insurance policy between Steamship and Delta Queen, he is enforcing the terms of that policy by virtue of the Louisiana Direct Action Statute.  La. Rev. Stat. Ann. §§ 22:1269 & 655 (2009).  The Direct Action Statute provides that in the case of an insolvent insured, the injured person has a right of direct action against the insurer within the terms and limits of the policy.  La. Rev. Stat. Ann. § 22:1269 (2009).  The Direct Action Statute further provides that:

> any action brought under provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

La. R..S. § 22:1269(C).  Moreover, the Louisiana Supreme Court has held that "the direct action statute does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *Descant v. Admin. of Tulane Educ. Fund*, 639 So.2d 246, 249 (La. 7/5/94).

11

As a result, this Court finds that Todd does not have an independent cause of action under the Direct Action Statute, but rather as a direct-action plaintiff Todd merely stands in the shoes of Delta Queen and is bound by the terms of its policy with Steamship - provided the conditions of the policy do not violate Louisiana law.  Therefore, even though Todd did not agree to arbitrate his dispute with Steamship, he is bound by arbitration agreement in Delta Queen's policy with Steamship.

This conclusion is consistent with Louisiana case law adopting the direct-benefits estoppel theory in which a party is estopped from repudiating an arbitration clause in a contract which he has previously embraced.  *See Lakeland Anesthesia, Inc. v. United Heathcare of Louisiana, Inc.*, 871 So.2d 380, 394-95 (La. App. 4 Cir. 2004) (holding that a plaintiff who sues to enforce a contract containing an arbitration contract is estopped from avoiding the arbitration provision in that same agreement) *writs denied*, 876 So. 2d 834 (La. 6/25/04).  Louisiana courts have also specifically applied the direct-benefits estoppel theory to non-signatories, binding them to arbitration agreements when they sue to enforce provisions of a contract that contains an arbitration agreement.  *Shroyer v. Foster*, 814 So.2d 83, 89 (La. App. 1 Cir 2002) ("The party cannot have it both ways; he cannot rely on the contract when it works to its [*sic*] advantage and then repudiate it when it works to his disadvantage."), *superseded by statute on unrelated grounds as stated in Arkel Constructors, Inc. v. Duplantier & Meric, Architects, LLC*, 965 So.2d 455, 458 (La. App. 1 Cir 2007).

Finally, due to the similarities between Louisiana and federal arbitration law, Louisiana courts routinely look to federal jurisprudence when interpreting state arbitration law.  *Aguillard v. Auction Management Corp.*, 908 So.2d 1, 25 (La. 6/29/05).  Fifth Circuit jurisprudence has adopted the direct-benefits estoppel theory, estopping non-signatory plaintiffs from repudiating the arbitration clauses in contracts which they otherwise seek to enforce.  *See, e.g., Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (finding that direct-benefits

estoppel applied because the non-signatory party had brought suit based upon the agreement containing the arbitration clause); *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 362 (5th Cir 2003) (finding that direct-benefits estoppel did not apply because the non-signatory party had not brought suit based upon the agreement containing the arbitration clause); *Noble Drilling Servs. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) ("A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.").

Because Todd is seeking to enforce the terms of the contract between Steamship and Delta Queen, he has embraced that contract such that, under both Louisiana and federal case law, he is estopped from repudiating the arbitration clause in that contract.

However, Todd argues that pursuant to the Direct Action Statute, he is only bound to the lawful conditions of the policy between Steamship and Delta Queen. (Rec. Doc. 73 at 7). Because Louisiana law prohibits arbitration clauses in insurance policies, Todd argues that Steamship may not assert the arbitration clause as a defense to his direct action. (Rec. Doc. 65 at 7).

Louisiana Revised Statute § 22:868 provides that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state...shall contain any condition....(2) [d]epriving the courts of this state of the jurisdiction of action against the insurer." La. Rev. Stat. Ann. § 22:868 (2009). Louisiana courts have interpreted this provision as voiding arbitration agreements in insurance contracts. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 719 n.11 (5th Cir. 2009) (en banc) (collecting cases). Normally, the Federal Arbitration Act would supersede any state law that imposed special requirements on arbitration agreements. *Carlisle*, 129 S.Ct at 1901. However,

under the McCarran-Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...." 15 U.S.C. § 1012(b).  Because the McCarran-Ferguson Act allows states to pass laws regulating insurance that would otherwise be superseded by federal law, the Fifth Circuit has held that the McCarran-Ferguson Act allows states to "reverse preempt" the Federal Arbitration Act.  *Steamship*, 601 F.3d at 334 n. 9 (citing *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006)).  But as Todd acknowledges, the Fifth Circuit has held that since the Convention is a treaty and not an act of Congress, the McCarran-Ferguson Act does not apply, and therefore the Convention supersedes Louisiana Revised Statute § 22:868.  *Id.* at 724.  As a result, this Court finds that in a Convention case, the Louisiana Direct Action Statute binds Direct Action plaintiffs to otherwise valid arbitration agreements, even if they are found in insurance contracts.

In conclusion, this Court finds that under Louisiana law, Todd can be compelled to arbitrate as a non-signatory.  As a result, this Court must determine which of Todd's claims are within the scope of the arbitration agreement between Steamship and Delta Queen.

### E. All of Todd's Causes of Action Are Captured by the Arbitration Agreement.

In his complaint against Steamship, Todd sought to recover: 1) the amount of the judgment found to be due him less any contractual deductible, 2) a declaratory judgment decreeing Steamship to be a member of an unincorporated association, all of the members of which are jointly and severally liable to Todd, 3) damages for breach of Steamship's duty to negotiate in good faith, and 4) damages for Steamships failure to make reasonable efforts to settle with the insured.  (Rec. Doc. 1-1 at 3).

Rule 36 of "The Steamship Mutual Rules and List of Correspondents, 1999/2000," provides:

14

a. If *any difference or dispute* shall arise between a Member and the Club concerning the construction of these Rules or of the Rules applicable to any Class in the Club or of any Bye-Law passed thereunder, or the insurance afforded by the Club under these Rules, or any amount due from the Club to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Directors.

(Rec. Doc. 55-4 at 30) (emphasis added).  Steamship claims that because Rule 36 refers to "any difference or dispute," it is a broad arbitration clause, and thus "the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Id*. at 11 (quoting *Sedco v. Petroleou Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985)).

As this Court previously discussed, English law applies to the question of whether Todd's claims fall within the scope of the arbitration agreement between Steamship and Delta Queen. According to the uncontroverted report of Steamship's English law expert, the arbitration clause in Steamship's Rules  is "extremely broad" and would include Todd's claims.  (Rec. Doc. 55-5 at 4).

The Court notes that even under Louisiana law - which Todd argues applies to this question - the arbitration clause in question would be considered a broad one.  *Snyder v. Belmont Homes, Inc.*, 899 So.2d 57, 62 (La. App. 1 2005) (finding a provision broadly defined when it stated that "any dispute, controversy or claim of any kind or nature that may arise shall be settled by arbitration"). In addition, Fifth Circuit case law, which Louisiana courts turn to when interpreting the Louisiana Arbitration Law, has also consistently found that "arbitration clauses containing the 'any dispute' language" are broad arbitration clauses.  *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (collecting cases).

As a broad arbitration provision, this Court is required to stay the action and allow the arbitrators to determine whether the dispute falls within the clause.  *Id*. (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985).

Even if the arbitration clause was narrow, this Court finds that Todd's disputes would fall within the arbitration clause in Steamship's Rules. All of Todd's claims arise from "the insurance afforded by the Club." Even Todd's state law claims for bad faith and failure to settle are claims based on the insurance policy between Steamship and Delta Queen and also about "money due from the Club to a Member." Any doubts about the scope of this arbitration agreement must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 18 (La.6/29/05).

Consequently, this Court must compel arbitration under the Convention because there is a) an agreement in writing to arbitrate the dispute; b) the agreement provides for arbitration in the territory of a Convention signatory; c) the agreement arises out of a commercial legal relationship; and d) a party to the agreement is not an American citizen. *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002).

### F. There Are No Alternative Reasons that Allow Todd to Avoid Arbitration.

Todd raises two final arguments in an attempt to convince the Court that it should not compel him to arbitrate his claims. First, Todd argues that the Convention requires an arbitration agreement signed by the parties and therefore the Convention does not apply because he never signed any agreement to arbitrate. (Rec. Doc. 65 at 3). However, the fact that Todd did not sign a written agreement is immaterial because it is undisputed that there was a signed written agreement to arbitrate between Delta Queen and Steamship. As the Fifth Circuit has said, "an arbitration clause in a contract provides an agreement in writing that satisfies the Convention, even when the party being forced to arbitrate has not signed the contract." *Steamship*, 601 F.3d at 334 n.11 (internal quotations omitted).

16

Next, Todd argues that under Article V of the Convention, a competent authority may decline to enforce arbitration if the subject matter of the difference is not capable of settlement by arbitration under the law of that country.  (Rec. Doc. 65 at 6).  From this Todd reasons that since arbitration agreements in insurance contracts are prohibited in Louisiana, then the Court can decline to enforce the arbitration agreement under Article V of the Convention.  However, the Fifth Circuit has already rejected the essence of Todd's argument as it found Louisiana Revised Statute § 22:868 superceded by the Convention.  *Safety Nat'l*, 587 F.3d at 732.  Moreover, the Supreme Court has stated that even though the Convention contemplates exceptions to arbitrability based on domestic law, in implementing the Convention Congress did not specify any matters that should be excluded from its scope.  *Mitsubishi Motors Corp. v. Soler Chryler-Plymouth, Inc.*, 473 U.S. 614, 639 n. 21 (1985).  In the absence of  express instructions from Congress, the Supreme Court refused to recognize any subject matter exceptions to the Convention.  *Id.*  As a result, this Court finds that the Convention applies to Todd's claims and therefore he is compelled to arbitrate them.

Finally, Todd argues that under *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 616 (1985) and *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995), the arbitration agreement between Delta Queen and Steamship will effect a prospective waiver of Todd's statutory remedies and therefore does not have to be enforced as it violates public policy.  (Rec. Doc. 65 at 18).  Todd reasons that because Delta Queen's policy selects English law to govern and London as the site of arbitration, the policy waives his statutory remedies under the Jones Act, 46 U.S.C. § 688, and the Louisiana Direct Action Statute.  *Id.*  Because of this waiver, Todd argues that the arbitration clause should be struck in its entirety.  *Id.* at 19.

Todd bases his argument on a footnote in *Mitsubishi*, which suggested that if "choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to

17

pursue statutory remedies...[the Supreme Court] would have little hesitation in condemning the agreement as against public policy."  473 U.S. at 637 n.19.  However, this footnote offers little guidance as to what amounts to "a prospective waiver."  It could not simply mean that a contract containing both a choice-of-law and choice-of-forum provision violates public policy, because the *Mitsubishi* Court specifically held that "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is ... an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction..." *Id.* at 631.  Moreover, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by [a] statute." *Id.* at 628.  Finally, the fact that foreign arbitrators may refuse to apply federal law does not amount to a prospective waiver of statutory remedies, because the Supreme Court has compelled arbitration despite the fact that there was no guarantee that the foreign arbitrators would apply the applicable federal statute. *Vimar*, 515 U.S. at 540.

In this case the Court finds that the arbitration clause and choice-of-law clause contained in the insurance policy between Delta Queen and Steamship do not amount to a prospective waiver of Todd's statutory remedies under either the Jones Act or the Louisiana Direct Action Statute.  The Court notes that the choice-of-law clause in Delta Queen's policy only applies to disputes related to that policy, not to any of Todd's Jones Act claims.  (Rec. Doc. 55-4 at 31).  Therefore, just as in *Vimar*, it is unclear what law the arbitrators would apply to any Jones Act claims that Todd might raise in arbitration.  *Vimar,* 515 U.S. at 540.  However, Todd has already asserted his Jones Act claims in state court and obtained a judgment against Delta Queen based on those claims.  (Rec. Doc. 73 at 3).  Therefore, Todd has not waived his Jones Act remedies because his state court judgment is his statutory remedy.  Moreover, Todd has not waived his Direct Action Statute

18

remedies, because that statute only provides plaintiffs a procedural right to proceed directly against an insured subject to all lawful terms and limits of the policy, which in the context of a Convention case, includes any arbitration agreements.  La. Rev. Stat. Ann. § 22:1269 (2009); *See generally, Safety Nat'l,* 587 F.3d 714 (holding that the Convention supercedes Louisiana law prohibiting arbitration agreements in insurance contracts).

### III.  CONCLUSION

This Court finds that all of the Convention's requirements have been satisfied and therefore Todd is required to arbitrate all of his claims against Steamship.  Under Louisiana state law, Todd is bound as a non-signatory to the arbitration agreement between Steamship and Delta Queen, which in turn is broad enough to cover all of Todd's claims.

Accordingly,

IT IS ORDERED that Defendants' Motion to Compel Arbitration and Stay Proceedings is GRANTED.  (Rec. Doc. 55).

IT IS FURTHER ORDERED that all proceedings in this matter shall be stayed pending the outcome of the parties' arbitration and the matter administratively closed.

New Orleans, Louisiana, this 28th day of March, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE